8 P.3d 670

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Russell M. NELSON, Defendant–Respondent.**

No. 25166.

Court of Appeals of Idaho.

May 30, 2000.

Review Denied Sept. 15, 2000.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Fred R. Palmer, Sandpoint, for respondent.

PERRY, Chief Judge.

The state appeals from the district court's order affirming the magistrate's granting of Russell M. Nelson's motion to suppress evidence. We reverse.

## I.

### BACKGROUND

At just after midnight on July 6, 1997, three United States Forest Service officers were inspecting campgrounds in the Priest Lake Ranger District in Bonner County. The officers observed three vehicles drive up and stop in the middle of a single-lane road adjacent to the parking area where the officers had parked their two patrol vehicles. The three vehicles had stopped in a single-file formation and had effectively blocked both the single-lane road and the entrance to the parking area. The occupants of the vehicles were "hollering and hooting." The officers walked from the parking area and contacted the drivers of the vehicles. Based upon their observations, the officers asked the drivers of the three vehicles to perform field sobriety tests. Because the parking area was too small to accommodate the three vehicles, they were not moved from the road. While in the process of conducting the field sobriety tests, a fourth vehicle approached on the road and the driver, on his own volition, stopped approximately thirty to forty yards behind the third vehicle. Because of the narrowness of the single-lane road, it was impossible for the fourth vehicle to pass the other three vehicles. The officers did not notice anything unusual about the fourth vehicle.

Approximately ten minutes after the fourth vehicle had arrived, one of the officers stepped behind the third vehicle and gestured for the fourth vehicle to pull forward. The gesture was accomplished by the wave of the officer's hand. The fourth vehicle complied by pulling to approximately fifteen to twenty yards behind the third vehicle. The officer then walked the remaining distance to meet the vehicle. The officer told the driver, through the vehicle's open window, that he and his fellow officers were investigating the group of three vehicles. The driver, who was later identified as Nelson, told the officer that he was enroute to a campground. The officer testified that he then noticed a strong odor of alcohol coming from the vehicle. When asked whether he had been drinking, Nelson answered in the affirmative. Nelson also stated that he was coming from a nearby resort and that he had had three or four drinks. Based upon his observations, the officer then had Nelson exit his vehicle and perform field sobriety tests, which Nelson failed.

Nelson was charged with driving under the influence.[1] Nelson filed a motion to suppress

---

1. Nelson does not argue on appeal that a United States Forest Service officer lacks the authority to enforce Idaho criminal law in state court, generally, or to investigate suspected violations

evidence. After a suppression hearing, the magistrate granted Nelson's motion on two alternative bases: (1) that the officer unlawfully seized Nelson within the meaning of the Fourth Amendment when the officer gestured for Nelson to pull his vehicle forward; and (2) that, based upon what the officer then discovered, the officer was unjustified in requiring Nelson to exit his vehicle and perform field sobriety tests. The state filed a motion for reconsideration, which was denied by the magistrate. The state then appealed to the district court, which affirmed the magistrate's granting of Nelson's motion to suppress. The state again appeals.

## II.

## ANALYSIS

### A.  Standard of Review

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993). When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

### B.  Seizure

The first issue presented for review on appeal is whether the magistrate erred in determining that the officer's gesture for Nelson to pull his car forward to talk to him constituted a seizure within the meaning of the Fourth Amendment.

■ The Fourth Amendment guarantees the right of every citizen to be free from unreasonable searches and seizures. However, the Fourth Amendment does not proscribe all contact between the police and citizens. *Immigration and Naturalization Service v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 254 (1984); *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1878, n. 16, 20 L.Ed.2d 889, 904, n. 16 (1968). So long as a reasonable person would feel free to go about his or her business, an encounter with a police officer is consensual and the encounter need not be justified by reasonable suspicion. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1878, n. 16, 20 L.E.2d at 904, n. 16; *see also State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999); *State v. Pick*, 124 Idaho 601, 604, 861 P.2d 1266, 1269 (Ct.App.1993). In other words, unless the circumstances of the encounter are "so intimidating as to demonstrate that a reasonable person would have believed he [or she] was not free to leave if he [or she] had not responded," one cannot say that an officer's request results in a seizure within the meaning of the Fourth Amendment. *Delgado*, 466 U.S. at 216, 104 S.Ct. at 1762, 80 L.E.2d at 255. As a result, a police officer generally does not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking if the person is willing to answer some questions or by putting questions to him or her if the person is willing to listen. *Bostick*, 501 U.S. at 434, 111 S.Ct. at 2386, 115 L.Ed.2d at 398; *State v. Zubizareta*, 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct.App.1992); *State v. Osborne*, 121 Idaho 520, 523, 826 P.2d 481, 484 (Ct.App.1991).

■ On appeal, Nelson conceded at oral argument that the officer's gesture, when viewed in isolation from the surrounding circumstances, did not constitute a seizure within the meaning of the Fourth Amendment.[2]

---

of driving under the influence by requiring the performance of field sobriety tests specifically. Nelson argues only that the officer was unjustified in doing so in the instant case because of an alleged unlawful seizure.

2. *See United States v. Laboy*, 979 F.2d 795, 799 (10th Cir.1992) ("[M]erely motioning a person to approach a police officer, unaccompanied by verbal communication or show of force, is not inherently coercive.").

However, the focus of our analysis is not limited to the officer's gesture. "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick,* 501 U.S. at 439, 111 S.Ct. at 2389, 115 L.Ed.2d at 401; *see also Delgado,* 466 U.S. at 215, 104 S.Ct. at 1762, 80 L.E.2d at 254; *Pick,* 124 Idaho at 604, 861 P.2d at 1269. Nelson argues that "the overwhelming majority of lay people" would have complied with the officer's gesture in the instant case, because they would have perceived the officers' conduct with the other three vehicles as a DUI checkpoint and would not have felt free to ignore the officer's gesture to pull forward. Our analysis, however, is not dependant upon whether a majority of lay people would have complied with the officer's request. As stated by Chief Justice Rehnquist, while "most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *Delgado,* 466 U.S. at 216, 104 S.Ct. at 1762, 80 L.E.2d at 255. Consequently, we must determine whether the officer's gesture in the instant case was so intimidating as to cause a reasonable person—not a majority of lay persons—to believe that the person was not free to leave if the person chose to ignore the request. *See Delgado,* 466 U.S. at 215, 104 S.Ct. at 1762, 80 L.Ed.2d at 254. Furthermore, the test for whether a reasonable person would feel free to ignore the police presence and go about his or her business presupposes an innocent person. *Florida v. Royer,* 460 U.S. 491, 519 n. 4, 103 S.Ct. 1319, 1335, n. 4, 75 L.Ed.2d 229, 250, n. 4 (1983); *Pick,* 124 Idaho at 604, 861 P.2d at 1269; *State v. Jordan,* 122 Idaho 771, 774, 839 P.2d 38, 41 (Ct.App.1992). This innocent person standard ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the individual being approached. *Jordan,* 122 Idaho at 774, 839 P.2d at 41.

Because Nelson did not testify at the suppression hearing, the only evidence contained in the record regarding what Nelson may have seen after stopping on the single-lane road was elicited from the officer that ultimately motioned for Nelson to pull forward. According to the officer, Nelson would have observed three civilian vehicles parked in a single-file formation and three uniformed forest service officers administering field sobriety tests to two persons. The officer also testified that he gestured for Nelson to pull forward in order to inform him about what was going on in the road ahead of him. The officers did not yell out to Nelson, draw their weapons, or physically restrain the movement of Nelson's vehicle. There were no signs, signals, or flashing lights indicating that an official roadblock had been established. In addition, the forest service vehicles were concealed from Nelson's view.

Based upon the totality of the circumstances observable by Nelson, we conclude that an innocent and reasonable person would not have believed that the officers had established an official roadblock. Consequently, an innocent and reasonable person would have felt free to decline the officer's gesture to pull forward and leave to find another route to his or her destination. Accordingly, we hold that the officer's gesture for Nelson to pull his car forward did not constitute a seizure within the meaning of the Fourth Amendment.

## C. Field Sobriety Tests

The second issue presented for review on appeal is whether the magistrate erred in determining that the officer was unjustified in requiring Nelson to exit his vehicle and perform field sobriety tests. This Court has previously held that the Fourth Amendment requires only a reasonable suspicion that a driver is driving while under the influence before an officer may request a driver to perform field sobriety tests. *Ferreira,* 133 Idaho at 483, 988 P.2d at 709; *Pick,* 124 Idaho at 605, 861 P.2d at 1270; *Jordan,* 122 Idaho at 775, 839 P.2d at 42. The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the encounter.

*Ferreira,* 133 Idaho at 483, 988 P.2d at 709; *State v. Naccarato,* 126 Idaho 10, 12, 878 P.2d 184, 186 (Ct.App.1994). Field sobriety tests are the least intrusive means reasonably available to verify or dispel the officer's suspicion that a driver is in violation of I.C. § 18–8004. *Ferreira,* 133 Idaho at 483, 988 P.2d at 709.

In the instant case, Nelson argues that the odor of alcohol and his admission that he had had three or four drinks were insufficient to support a reasonable, articulable suspicion that he was in violation of I.C. § 18–8004. Nelson's argument is indistinguishable from the argument made by the defendant in *Ferreira.* In that case, this Court held that the odor of alcohol and Ferreira's admission that he had two glasses of wine and a cognac prior to the stop of his vehicle were sufficient to justify a reasonable suspicion that Ferreira was in violation of I.C. § 18–8004. Likewise, the officer in the instant case had a reasonable, articulable suspicion, based upon the totality of the circumstances, that Nelson was in violation of I.C. § 18–8004. Thus, the officer was justified in requiring Nelson to exit his vehicle and perform field sobriety tests.

### III.

### CONCLUSION

The officer's gesture for Nelson to pull his car forward did not constitute a seizure within the meaning of the Fourth Amendment. In addition, the officer was justified in requiring Nelson to exit his vehicle and perform field sobriety tests. Consequently, the district court's order affirming the magistrate's granting of Nelson's motion to suppress evidence is reversed.

Judge SCHWARTZMAN and Judge Pro Tem B. WOOD concur.