175 P.3d 216

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Val J. BUELL, Defendant–Appellant.**

**No. 33435.**

Court of Appeals of Idaho.

Jan. 3, 2008.

Review Denied April 14, 2008.

Molly J. Huskey, State Appellate Public Defender; Shannon N. Romero, Deputy Appellate Public Defender, Boise, for appellant. Shannon N. Romero argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

This appeal challenges an order denying Val J. Buell's motion to suppress evidence of his performance of field sobriety tests. According to Buell, the evidence should be suppressed because his consent to perform the tests was coerced. We affirm.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

A Coeur d'Alene police officer was in the parking lot of a bar when he observed Buell drive in, park, and lose his footing in attempting to exit his vehicle. The officer spoke to Buell, who admitted to consuming alcohol. The officer decided to detain Buell to investigate whether he had been driving under the influence. The officer asked Buell to perform field sobriety tests, but Buell hesitated to do so and began to protest. During further discussions, the officer informed Buell, "You're required by law to do them." Buell said that he did not want to, and then turned his back to the officer, placing his hands behind his back in apparent anticipation of being handcuffed and arrested. The officer touched Buell's back to encourage him to face the officer, and Buell turned back around. The officer said, "Let's do these, okay." Buell responded, "Okay" and performed the tests, which he failed. Buell was then arrested for driving under the influence, Idaho Code §§ 18–8004(1)(a), – 8005(7).

Buell moved to suppress evidence of his performance on the field sobriety tests, claiming Fourth Amendment violations by the officer. Buell contended that the officer misrepresented the law in telling Buell that he was required by law to perform the tests and this misrepresentation, in conjunction with the officer's touching of Buell, coerced Buell's consent to perform the tests. Buell further asserted, in the alternative, that the officer's misstatement of law and act of touching Buell's person transformed the investigative detention into a de facto arrest, which was not supported by probable cause.

The district court denied the motion, holding that to the extent that consent was at issue, the evidence did not show that Buell's performance of the tests was coerced. The district court further held that Buell's assertion of a de facto arrest was not supported by the facts and that the officer's alleged mistake of law did not warrant suppression. Buell thereafter entered a conditional guilty plea, reserving the right to appeal the denial of his motion.

## II.

### ANALYSIS

#### A. Buell's Consent to Perform the Field Sobriety Tests Was Not Required

The Fourth Amendment to the United States Constitution prohibits the unreasonable searches or seizures of persons or property. A search or seizure conducted without a warrant issued on probable cause is presumptively unreasonable unless it falls within one of the established exceptions to the warrant requirement. *Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334, 343 (1993); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Weaver,* 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). Two such warrant exceptions must be considered here. The first, which Buell assumes to be applicable, permits police to conduct warrantless searches with the voluntary consent of the individual. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-2044, 36 L.Ed.2d 854, 858 (1973); *State v. Hansen,* 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003). The second exception implicated here applies when there is an investigative detention based upon reasonable suspicion of criminal

activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigative detention must be justified by articulable facts raising reasonable suspicion that the individual has been or is about to be engaged in criminal conduct. *Id.* at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *State v. Zuniga*, 143 Idaho 431, 434, 146 P.3d 697, 700 (Ct.App. 2006). The detention of an individual who is reasonably suspected of driving under the influence of intoxicants constitutes such a permissible warrantless detention.

■ Buell acknowledges that his initial detention for investigation of DUI was based on reasonable suspicion and therefore was permissible. He contends, however, that his consent to perform the field sobriety tests was coerced, and therefore evidence of the tests must be excluded as fruit of a Fourth Amendment violation. We conclude that Buell's coercion argument is irrelevant because constitutional standards did not require his voluntary consent to the field sobriety tests in this circumstance.

In *State v. Ferreira*, 133 Idaho 474, 480, 988 P.2d 700, 706 (Ct.App.1999), we considered whether the administration of field sobriety tests to a motorist was permissible on the basis of reasonable suspicion of DUI. Balancing the individual's privacy interest against the state's interest in conducting the tests, we concluded that the state's legitimate interest in protecting its citizens from life-threatening danger caused by drunk drivers outweighed the minimal intrusion into the driver's privacy. We therefore held that field sobriety tests, although searches, are a reasonable and permissible component of an investigation where the officer has detained the individual on reasonable suspicion of DUI. *Id.* at 479–81, 988 P.2d at 705–07.

■ In light of our *Ferreira* decision, Buell's argument that his "consent" to the field sobriety tests was involuntary is simply immaterial for if, as Buell concedes, the officer reasonably suspected DUI, then the officer needed no consent from Buell in order to administer the tests. Fourth Amendment standards do not require *both* reasonable suspicion and consent. Rather, field sobriety tests may be analogized to a warrantless pat-down search of an individual for weapons, conducted during an investigative detention. Such a pat-down may be performed without consent upon reasonable suspicion that the person is armed and presently dangerous. *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Henage*, 143 Idaho 655, 660, 152 P.3d 16, 21 (2007). Likewise, field sobriety tests may be conducted without consent during an otherwise permissible detention, where they are justified by reasonable suspicion of DUI.

It must be acknowledged, of course, that an individual who has been instructed by a police officer to perform field sobriety tests has the power to prevent the tests by refusing to cooperate, but that power does not equate to a constitutional right to refuse. The Idaho Supreme Court explored this dichotomy between a right to refuse and the power to prevent in a related context in *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989), where a blood sample, to be tested for alcohol concentration, was taken without consent from a driver injured in an automobile accident. The Court considered the application of Idaho's implied consent law, I.C. § 18–8002, which provides that anyone who drives in this state is deemed to have given consent to an evidentiary test of breath, blood or urine for intoxicants, but which also provides certain consequences for a driver's refusal to submit to the test. The Court observed: " 'Consent' describes a legal act; 'refusal' describes a physical reality. By implying consent, the statute removes the right of a licensed driver to lawfully refuse, but it cannot remove his or her physical power to refuse." *Woolery*, 116 Idaho at 372, 775 P.2d at 1214 (quoting *State v. Newton*, 291 Or. 788, 636 P.2d 393, 397 (1981)).

The case before us involves no statutory implied consent like that applied in *Woolery*, but it does involve a separate exception to the warrant requirement established in *Ferreira*, which allows an officer to conduct field sobriety tests on reasonable suspicion. Like the driver in *Woolery*, Buell had no right recognized in law to refuse the tests, and his mere retention of physical power to prevent the testing does not mean that his consent, in a legal sense, was necessary for lawful administration of the tests. *In accord, see*

*McCormick v. Municipality of Anchorage,* 999 P.2d 155, 159–62 (Alaska Ct.App.2000) (stating in dicta that because there is no constitutional right to refuse consent to field sobriety tests requested by an officer with reasonable suspicion, evidence of the refusal of consent was admissible at the driver's trial); *State ex rel. Verburg v. Jones,* 211 Ariz. 413, 121 P.3d 1283, 1285–86 (Ct.App. 2005) (holding same). Consequently, mere involuntariness in Buell's performance of the tests demonstrates no Fourth Amendment violation.

**B. The Investigative Detention Was not Transformed into a De Facto Arrest**

■ Buell next argues that the circumstances of the encounter transformed what began as an investigative detention, which requires only reasonable suspicion of criminal activity, into a de facto arrest, which requires probable cause. *See generally United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989); *State v. Gallegos,* 120 Idaho 894, 896, 821 P.2d 949, 951 (1991). Buell reasons that because probable cause for his arrest for driving under the influence did not exist before the field sobriety tests were conducted, the tests occurred during an unlawful arrest and should have been suppressed.

■ There is no bright line rule to determine whether an investigative detention has evolved into a de facto arrest. Instead, "common sense and ordinary human experience must govern over rigid criteria." *State v. Buti,* 131 Idaho 793, 796, 964 P.2d 660, 663 (1998). "The factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds." *Ferreira,* 133 Idaho at 480, 988 P.2d at 706; *State v. Martinez,* 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct.App.1996). In *Ferreira,* we contrasted the nature of the roadside field sobriety tests with circumstances that would constitute a de facto arrest, and by application of the above factors we concluded that only the lesser standard of reasonable suspi-

cion is required. *Ferreira,* 133 Idaho at 480–81, 988 P.2d at 706–07. Buell argues, however, that the circumstances of his detention take his case outside of this general rule. According to Buell, the officer's alleged misstatement of law (that Buell was required by law to participate in field sobriety tests) and the officer's physical touching of Buell changed the nature of the encounter because the officer's display of force and authority were extreme.

■ We are not persuaded. In *Ferreira* we pointed out that field sobriety tests are a reasonable part of the process to investigate suspected DUI and are the least intrusive means reasonably available in a short time-frame to confirm or dispel the officer's suspicion. *Id.* at 480–83, 988 P.2d at 706–09. The officer's mere touching of Buell's person was innocuous. As revealed by a videotape of the incident, the officer lightly touched Buell on his back to encourage him to turn around, face the officer and perform the tests, which Buell did. Even the use of handcuffs does not, *ipso facto,* transform an investigatory detention into an arrest, *State v. Frank,* 133 Idaho 364, 368, 986 P.2d 1030, 1034 (Ct.App. 1999), so the limited physical contact here plainly did not do so. And even if the officer's representation that the law required Buell to perform the tests slightly misstated the law, it did not amount to such a show of force or misconduct as to convert the encounter into an arrest. Whether the statement even constitutes a misrepresentation of law is subject to debate. Although Idaho law prescribes no civil or criminal penalties for a suspect's refusal to perform field sobriety tests similar to the civil sanctions for refusal of alcohol concentration testing, *see* I.C. §§ 18–8002, –8002A, our decision in *Ferreira* established that Buell had no legally recognized right to refuse the tests. His capacity to foil the testing was one of physical power, not legal right, and the officer was justified in instructing Buell to perform the tests. Accordingly, we hold that neither this statement by the officer to Buell, nor the officer's touching of Buell's back, nor the two in combination, transformed the investigative detention into a de facto arrest.

**58**

### C. The Officer's Alleged Mistake of Law Did not Render Buell's Detention Per Se Unreasonable

█ Lastly, Buell argues that the officer's alleged mistake of law rendered his detention per se unreasonable. Buell relies on *State v. McCarthy*, 133 Idaho 119, 982 P.2d 954 (Ct. App.1999), where the officer's mistake of law as to the posted speed limit caused the officer to stop the defendant's vehicle. He also cites numerous decisions from other jurisdictions holding that a mistake of law that forms the basis for a stop renders the ensuing detention unreasonable. All of these authorities are inapposite, however, because the officer's alleged mistake of law in this case did not cause Buell's detention. Before the alleged misstatement was made, Buell had already been detained on reasonable suspicion of driving under the influence. Thus, this component of Buell's argument has no logical merit.

### III.

### CONCLUSION

The district court's order denying the motion to suppress evidence is affirmed.

Chief Judge GUTIERREZ and Judge PERRY concur.